# CHARLESTON.

LAFAYETTE GRANER, *etc. v.* JOSEPHINE BORING

(No. 6202)

Submitted April 24, 1928.     Decided May 1, 1928.

1. APPEAL AND ERROR—*Errors Not Raised on Motion for New
   Trial, and Not Saved by Special Bill of Exceptions, Will
   Not be Considered on Appeal.*

   Errors not brought to the attention of the trial court in
   motion for new trial, and not saved by special bill of excep-
   tions will not be considered in the appellate court.   (p. 508.)
   (Appeal and Error, 3 C. J. § 849; 4 C. J. § 1786.)

2. TRIAL—*Binding Instruction Must Present All Material Phases
   of Issue to Which it Relates on Which There is Sufficient
   Evidence; Giving Binding Instruction Which by Narrow-
   ness Obviously Tends to Mislead Jury, Even Though Cor-
   rect as to One or More Phases of Case, is Error.*

   A binding instruction must be broad enough in its scope
   and effect to present all material phases of the issue to which
   it relates on which there is sufficient evidence. If by reason
   of its narrowness it obviously tends to mislead the jury, even
   though correct as to one or more phases of the case, it is
   error to give it to the jury.   (p. 510.)
   (Trial, 38 Cyc. p. 1634.)

   (NOTE: Parenthetical references by Editors, C. J.—Cyc. Not
   part of syllabi.)

Error to Circuit Court, Ohio County.

Action by Lafayette Graner, doing business as the Graner Realty Company, against Josephine Boring. Judgment for plaintiff, and defendant brings error.

*Judgment reversed; verdict set aside; new trial awarded.*

*Charles F. Paul, Jr.,* and *P. J. McGinley,* for plaintiff in error.

*John P. Arbenz* and *A. E. Bryant,* for defendant in error.

LIVELY, JUDGE:

Lafayette Graner, doing business as Graner Realty Company, sued Josephine Boring for commissions claimed by him on the sale of her property in the City of Wheeling, and obtained verdict and judgment against her for $660.00 on September 23, 1927, from which she prosecutes error.

Mrs. Boring was devised a one-fourth interest in the real estate, the other three-fourths being devised to her three children, Mary, Loretta and John, all of mature age. The basis of plaintiff's claim for commission is a writing signed by Mrs. Boring dated July 7, 1924, addressed to Graner Realty Company, and accepted and acted upon by it, which in part reads as follows: "In consideration of your endeavor to procure a purchaser for the property described herein and registration of the same with the Wheeling Real Estate Board, the undersigned grants you the sole and exclusive right for a period of six months, and thereafter until thirty days notice in writing has been given to terminate the same, to sell said property at the price and upon the terms stated here hereon, or at any other price or terms to which the undersigned may consent. The undersigned further agrees to assist and cooperate in such sale. The undersigned hereby agrees to pay you commission in accordance with the Wheeling Real Estate Board rates printed on the reverse side of this contract in case said property or any portion thereof is sold by the undersigned, by you, or any person during the term of the contract; or, within three months after its expiration through

your instrumentality, or that of any board member. Exclusive privilege is granted you to place your sign on the property. You are also permitted to list this property with all members of the Wheeling Real Estate Board." (Signed Mrs. Josephine Boring, owner). On the reverse side is a description of the property and the sale price of $20,000.00. The commissions in case of sale was 5% on the first $3,000.00, and 3% on the remainder. This writing was procured by Mrs. E. J. Wolf, representing plaintiff, at the home of Mrs. Boring, who was then about 76 years of age. It appears that plaintiff listed and advertised the property for sale, the last advertisement being made in the winter of 1925, and made other efforts to sell the property without success. About thirteen months after the date of the writing, a Mr. Ross, representing another real estate broker, the Pan Handle Realty Company, had an inquiry from Sacher and Rosenheim, who desired to purchase property on 16th street, the street on which defendant's property was located, and learning from Mrs. Boring about August 1, 1925, that her property could be purchased, obtained from her verbal authority to sell it. Negotiations were then had between Schell Amos, representing the Pan Handle, and Sacher and Rosenheim for a sale to the latter, and a survey of the property was made by engineers employed by Amos for the tentative purchasers. Mrs. Wolf having learned that the property was either sold or a sale contemplated, went to the home of Mrs. Boring on August 8th, and testifies that Mrs. Boring told her she was selling the property and had signed a contract, whereupon Mrs. Wolf told her that the contract with plaintiff was in force and that her agent (plaintiff) would expect its commissions. Mr. Glatz, son-in-law of Mrs. Boring, and her son, John Boring, were present, and asked to see the listing contract and went to plaintiff's office with Mrs. Wolf where it was shown to them. That afternoon, August 8, 1925, Mrs. Wolf sent Mrs. Boring a letter signed by Graner Realty Company in which it is stated that the writer understood that Pan Handle Realty Company had disposed of the property, and inasmuch as the contract of July 7, 1924, had not term-

inated, commissions under that contract would be expected.
Mrs. Boring by letter of the 10th of August 1925, notified
plaintiff in keeping the contract that she desired to terminate
the contract under the thirty days notice provision.  Plaintiff
answered this letter on August 17th, refusing to accept the
withdrawal, claiming that the property had already been
sold.  Later a deed from Mrs. Boring and the other owners
to Edward Sacher dated September 12, 1925, and acknowl-
edged September 21, 1925, was admitted to record on Septem-
ber 22, 1925.   On July 30, 1926, this suit was instituted.

Plaintiff claims its commissions under the "listing" con-
tract of July 7, 1924.  Defendant admits the contract, but
defends on the ground that the contract was terminated by
notice under the terms thereof and was no longer binding at
the time her property was sold through Amos.

Alleged errors are assigned relating to the admission and
rejection of evidence, and permitting plaintiff's counsel to
lead witnesses, but as none of these errors were saved in
special bills of exception nor made a ground for setting aside
the verdict, they cannot be considered.  *Stewart* v. *Pollack-
Forsch Company,* 143 S. E. 98, handed down this day.  The
other errors relate to the giving and refusal of instructions,
and refusal to set aside the verdict.  It is necessary to detail
the evidence in order to ascertain if there was error in the
giving or refusal of instructions.

The question at issue was the date of the sale of the prop-
erty to Sacher and Rosenheim (for although the deed was
made to Sacher, he says that Rosenheim is a part owner),
and whether the delivery of the deed was merely carrying
out that contract of sale.  When did Mrs. Boring sell the
property to Sacher?  When was a valid and enforceable sale
made by her?  If a binding sale was made before September
10th, although not formally closed by deed, while plaintiff's
contract was alive and binding, and the execution and de-
livery of the deed in September was to avoid liability to
plaintiff, then plaintiff is entitled to recover.  If not, then
he is not entitled to recover.  On this issue the evidence is
conflicting.  Mrs. Wolf says that when she learned a sale had
been made through the Pan Handle Realty Company she

went to Mrs. Boring's home about the 8th of August, and asked her if she was selling the property and was answered in the affirmative, and that she, defendant, had signed a contract, and that the agency through which the sale had been made was the Pan Handle Realty Company that she could not repeat the words used by Mrs. Boring, but understood that the contract of sale which Mrs. Boring had signed was with the Pan Handle Realty Company, and she *presumed* it must have been a sale contract, similar to that which had been given to plaintiff on July 7, 1924, thirteen months before. Mrs. Wolf did not then know to whom the property had been sold through the Pan Handle; but afterwards Mrs. Wolf and the plaintiff Graner learned the names of the prospective purchasers, and about August 12th, called on Rosenheim at his place of business and attempted to sell the property to him, asserting that they could sell the property at a less price than that offered by the Pan Handle Agency. According to Schell Amos, who was present on this occasion representing the Pan Handle, Rosenheim thereupon told Graner that if he could get the property for less, to go ahead and get it for him, whereupon Amos called the deal off so far as he, Amos, was concerned. Graner made no further effort to sell to Rosenheim. The property was sold at $20,000.00, to Sacher, the deed thereto being acknowledged on September 21st. It appears from the testimony of Amos that Mrs. Boring did not list the property with him or his agency for sale. She simply gave him verbal authority to sell the property for her at $20,000.00. There is evidence from Sacher to the effect that he had decided to buy the property about August 1st, but that he did not actually buy it until September 21st, when the deed was delivered, and the money paid. He says he concluded to buy it before September, but the owners refused to convey the property and the deal was called off. For what reason the owners refused to deal he does not state, nor does he say what price and terms he had offered on or about August 1st, when he made up his mind to purchase. Did the owners refuse to close the deal because of the Graner contract? The part owners, John Boring, Loretta Glatz and Mary Wilhelm, did not know of the Graner listing contract

at that time. They were first advised of it by Mrs. Wolf on August 8th. And Mrs. Boring says she was ignorant of the provision in the listing contract which gave plaintiff a continuing exclusive right to sell, and that she relied upon Mrs. Wolf's statement to her that the contract expired in six months. She says that no agreement of sale was made until in September, and until that time she did not know the identity of the purchaser. Sacher says he had decided to purchase when he directed a survey in order to ascertain a dividing line about August 10th, but does not say that the owners had agreed to sell at that time, or what price he had offered or the terms. The reason he gives for the sale not being closed before the delivery of the deed, was as he was told, that the parties would not sign the deed. Amos says he attempted to sell to Sacher and Rosenheim, to whom he finally did sell later on, but could not get the signatures of the "heirs" and therefore called the negotiations off; and that when Graner attempted to sell to Rosenheim in his presence, he (Amos) declared the deal off so far as he was concerned. He says that Sacher agreed to pay the price before September, and he so informed Mrs. Boring, and she consented but with the condition *that it must be agreeable to the other owners.* It is quite evident from this evidence, that there was no memorandum in writing for the sale of the property signed by Mrs. Boring or her co-owners which would bind her or them to a sale made by Amos representing the Pan Handle Realty Company. Sacher could not have compelled the sale to him although Mrs. Boring had agreed. If such agreement had been made, it was entirely verbal, and not binding under the statute of frauds if the seller refused to convey.

Plaintiff's instruction No. 3, objected and excepted to, told the jury that if they believed that plaintiff signed the contract of July 7th, and that before the termination of that contract defendant herself *entered into a contract* for the sale of the property, then they should find for plaintiff, although they should find that the sale was not completely consummated by delivery of the deed until after her contract with plaintiff had been terminated, as therein provided. We think this instruction is erroneous inasmuch as defendant had the legal

right to repudiate the verbal contract made with Amos, and refuse to sell. It will be noted that she agreed to sell to the purchaser at the price named, on condition that it was agreeable to the other owners. The instruction does not tell the jury that her contract with Amos to sell must be binding, or that she considered it binding and affirmed it by deed. On the other hand, the court refused to give defendant's instruction No. 3 (or any instructions offered by defendant), which would have told the jury that plaintiff must prove by a preponderance of the evidence that the property "was actually" sold before plaintiff's contract expired, and if they believed that no sale was made until after plaintiff's contract expired, then they should find for the defendant. While the word "actually" as used in this instruction is not as appropriate as some other expression which would convey the meaning of a binding contract of sale on part of defendant or one considered as such and later fulfilled, it sufficiently indicated to the jury that a contract of sale not legally obligatory upon her to fulfill, and which she did not fulfill, although made by her while plaintiff's contract was in force, would not entitle plaintiff to recover. And the latter part would have told the jury that if they believed no sale was made until after plaintiff's contract expired, then they should find for defendant. It was the theory of defense that no sale had been made until September 21st, long after plaintiff's contract had expired; and there was evidence in support of this theory. The theory of plaintiff was that a binding sale had been made by plaintiff to Sacher before August 8th, although not formally closed until September 21st, or if not binding, defendant had considered it so, and accepted it, but delayed making the deed until plaintiff's right expired. And there was evidence to sustain that theory. A party is entitled to an instruction if there is evidence on which to base it, on any material issue. Defendant's theory was not allowed to go to the jury on instructions. It will be observed that plaintiff's contract on which he relies for recovery says that he shall have his commissions, if the property or any part thereof is *sold* by Mrs. Boring, by plaintiff, or any person during the term thereof, whereas plaintiff's instruction tells the jury that if

they believe Mrs. Boring entered into a *contract for the sale of her property* while plaintiff's listing contract was in force, then they should find for plaintiff, even though they should find the sale was not completely consummated by deed until after plaintiff's contract had expired. A contract for sale is not a sale, nor does it necessarily follow that a sale will be consummated as a result. · Specific performance is often denied in such cases for controlling reasons. Such contracts are often breached by later conveyance to innocent buyers, resulting in suits for damages for breach. The simple making of a contract to sell would not entitle plaintiff to recover. If Mrs. Boring had entered into a binding contract to sell to Sacher, the deed to be delivered at a future date if the property was not sold by plaintiff within the life of his contract, it would scarcely be contended that plaintiff could recover simply because the contract was made by her during the life of his contract. ·'Of course, that is not the situation here, but it serves to illustrate that the simple entry into the verbal contract with Amos did not necessarily make a sale. It may be that if the verbal contract was made and Amos produced a purchaser able, willing and ready to buy in accordance therewith and *accepted* by the sellers, but that the formal execution was delayed for the purpose only of waiting until plaintiff's contract had expired, in order to avoid his commissions, then plaintiff could recover. That is the theory on which plaintiff proceeded; and, as above stated, there is evidence to support it. But the instruction for plaintiff is binding and does not include plaintiff's theory of right to recover; nor does it incorporate the theory of the defense. The defense was that the negotiations for sale with Sacher prior to August 8th were simply negotiations which were called off, and new negotiations begun in September which culminated in the meeting of minds in a closing of the deal September 21st; and that therefore there was no mere delay in executing and delivering the deed in order to defraud plaintiff of his commissions. It is error to give a binding instruction which ignores a legitimate defense which is supported by evidence. *Swiger* v. *Runyon,* 90 W. Va. 322. "As a general rule, a party is entitled to have the jury consider

all the evidence properly before them in a case, in arriving at their verdict, and an instruction which ignores such evidence is erroneous, as it tends to lead them to believe that it is unimportant or false." 14 R. C. L. p. 794, section 55. The binding instruction for plaintiff did not cover the entire case and was likely to confuse and mislead the jury. They may have concluded therefrom that because defendant had given verbal permission to Amos to sell (a fact admitted) during the life of plaintiff's listing contract, then plaintiff could recover, although the deed to the property was made and delivered after plaintiff's contract had expired. And literally construed the instruction was a direction to find for plaintiff. It was admitted that she gave Amos the right to sell for her before August 8th, and it was admitted that the deed was acknowledged and delivered to Sacher on September 21st following. We think the instruction too narrow in view of the evidence, and misleading. *Mylius* v. *Lumber Company*, 69 W. Va. 346. And for that reason the judgment is reversed, the verdict set aside and a new trial awarded.

*Judgment reversed; verdict set aside; new trial awarded.*