LAFAYETTE GRANER *v.* JOSEPHINE BORING

(No. 7136)

Submitted April 26, 1932.   Decided May 3, 1932.

*James Paull, Jr.,* and *Ewing & McGinley,* for plaintiff in error.

*A. E. Bryant* and *John P. Arbenz,* for defendant in error.

MAXWELL, JUDGE:

Defendant prosecutes writ of error to a judgment of the circuit court of Ohio County against her for $729.30, based on a verdict.

This is the second review of this case.   For opinion on first writ of error, see *Graner* v. *Boring,* 105 W. Va. 505, 143 S. E. 232.

In July, 1924, an agent of the plaintiff obtained of the defendant, then of the age of about 76 years, a listing contract authorizing the Graner Realty Company to sell the defendant's property on Sixteenth Street in the City of Wheeling. The period of said listing was for six months "and thereafter until thirty days' notice in writing has been given to terminate the same." By the said contract the defendant obligated herself to pay commission at the rate stipulated on the reverse of the instrument in case the said property or any portion thereof was sold by the defendant, by Graner Realty Company, or by any other person within the period of the contract. With this authorization uncancelled the plaintiff in August, 1925, authorized a representative of the Pan Handle Realty Company to undertake to find a buyer for and to make sale of the Sixteenth Street property. Because of her advanced age (80 at the time of testifying), the testimony of the defendant is not clear. The agent of the Pan Handle Company testifies that the price at which his company was thus authorized to sell the property was $20,000.00 net.

Through the efforts of the Pan Handle Company Edward Sacher, acting for himself and one Rosenheim, an associate, became interested in the property and agreed to purchase the same at the price of $20,700.00. On about the 8th of August, he signed a contract of purchase and gave his check to the Pan Handle Company for $100.00.

Upon hearing that the property was being sold, an agent of the plaintiff went to the defendant, called her attention to the fact that the listing contract executed by her to the plaintiff in July, 1924, was still in effect, and told her that she could not make sale of the property without paying commission to the plaintiff. The defendant's son, John Boring, and her son-in-law, Lawrence Glatz, then went to plaintiff's office and examined the contract which the defendant had signed. They satisfied themselves that since no notice of termination had been given under the terms of the contract, it remained in force. Thereupon they arranged for a notice of termination to be given by the defendant to

the plaintiff, and such notice was given August 10, 1925, effective in thirty days.

On the 21st of September, 1925, the defendant, her son and his wife, and her two daughters and their husbands executed and delivered to Edward J. Sacher a deed for the property. Mr. Sacher testified that the consideration was $20,700.00.

The plaintiff's suit is for commission. He says that under the listing contract of July, 1924, he is entitled to commission on any sale made by the defendant or by any person for her within six months or thereafter until the contract terminated by thirty days' notice; that it is evident that the sale to Mr. Sacher was in fact made by the Pan Handle Realty Company prior to the day of the giving of the notice to the plaintiff by the defendant for the termination of the listing contract; that the closing of the transaction was then delayed until after the 10th of September for the purpose of avoiding the contractual obligation for commission to the plaintiff. The jury seems to have adopted this view, though both Sacher, the purchaser, and Amos, agent of Pan Handle Realty Company, testify that the negotiations of early August were entirely abandoned (not merely suspended as plaintiff contends), and that new negotiations were opened in September at the instance of Amos.

But there are serious legal questions which must be examined. The defendant was not the sole owner of this property. She, her daughters and her son owned each an undivided one-fourth interest. The testimony of her son-in-law, Glatz, is undisputed that "the property was being sold" by the defendant "unbeknownst to the other heirs". The defendant had no authority to act for them. Thus it appears that the daughters and the son were in no wise legally bound by any of the preliminary negotiations or dealings with reference to the sale of the property. So far as the record discloses, there was nothing to obligate them in any manner until they executed the deed on the 21st of September. Whether they would make the conveyance was a matter wholly beyond the control of both the plaintiff and the defendant.

The most that the plaintiff has to rely upon in this connection is the testimony of the defendant that she had told her family that if she got a chance to sell the property she would do so. This was very indefinite, and of course carried no legal significance. So, it is clear, as to these three interests there was no binding contract to sell prior to September 10, 1925, the date of the expiration of the termination notice which was given by the defendant to the plaintiff August 10th, preceding.

Following a process of elimination there remains the query as to whether there was any binding contract as to the defendant, prior to September 10, 1925, for the sale of the property to Sacher. Of course, to be binding on her, such contract or a memorandum thereof in writing must have been signed by her. And in the absence of the production of such contract or memorandum at the trial, evidence of its existence and execution by her must be clear and satisfactory. Such evidence is lacking. The only witnesses who testified about this are Sacher, Amos, and Emma Wolf, agent of the plaintiff. The former, who says that he signed a contract of purchase in the early part of August, does not remember whether it was signed by the defendant or not. There is no suggestion that it was signed in her behalf by some other person. Amos goes no further than to say he believes that the defendant signed it. Mrs. Wolf testifies that when she went to see the defendant about the matter after hearing that the property was being sold through the instrumentality of the Pan Handle Company, the defendant told her that she had signed a contract of sale. The force of this testimony is greatly discounted, however, by the fact that the witness admits on cross-examination that at the first trial she conceded that "probably" the defendant was referring to a listing contract with the Pan Handle Company and not to a contract of sale with Sacher.

There might be justification for holding this testimony of Amos and Mrs. Wolf sufficient as against a defendant who would have it easily within his power to present an unequivocal denial that he signed the contract and would fail to do so. But not so as against an aged woman, persuaded

at seventy-six to sign a listing contract carrying provisions as to the period of the existence of the contract which were very highly favorable to the realty company and unfavorable to her, and who, at the time of the trial, because of the weight of four score years found that her memory was dim and her comprehension blurred. Common justice and ordinary humanitarian considerations require that in such situation evidence which would fasten obligations upon one so situated must be clear and free from doubt. We hold that the evidence is wholly insufficient to establish that there was a contract or memorandum in writing, signed by the defendant, for the sale of the property to Sacher.

The signing of the contract by Sacher, though binding him, did not bind the defendant. It was enforceable against the purchaser but not enforceable against the seller. The statute of frauds does not require both parties to a sale and purchase of real estate to sign a memorandum. It is only the party sought to be charged who must have signed. Code 1923, chapter 98, section 1; *Armstrong* v. *Coal Co.*, 67 W. Va. 589, 69 S. E. 195; *Land Co.* v. *Snidow*, 77 W. Va. 54, 86 S. E. 915.

It follows that just as there was no binding contract as to the interest owned by the three children of the defendant, her co-tenants, there was none as to the interest owned by her.

On the first writ of error, we reversed the judgment and set aside the verdict because plaintiff's instruction No. 3 erroneously informed the jury that if they believed from the evidence that the plaintiff signed the contract of July, 1924, and that before the termination of that contract defendant *entered into a contract for the sale of the property,* they should find for plaintiff, although they should further find that the sale was not completely consummated by delivery of the deed until after her contract with the plaintiff had been terminated, as therein provided. Judge Lively, who wrote the opinion for the court, called attention to the fact that a mere contract to sell is not a sale, and that it does not necessarily follow that a sale will be consummated as a result; and that the simple making of a contract by the de-

fendant to sell would not entitle the plaintiff to recover commission. He emphasized the fact that the instruction did not tell the jury, as it should have done, that the defendant's contract with Sacher must have been binding on her in order to afford basis for plaintiff's claim for commission. So, we sent the case back for re-trial. It will be remembered that under the listing contract of July, 1924, the defendant obligated herself to pay commission to the plaintiff in event the property was *sold* within the period of the contract.

On the re-trial, plaintiff had full opportunity to prove, if he could, that the Sixteeth Street property was .sold, or that a binding contract of sale was made, prior to the expiration of the period of his listing contract on September 10, 1925. This, as we have demonstrated, he failed to do, though the whole theory of his case on re-trial was that there was such binding contract.

For the reasons stated, we reverse the judgment, set aside. the verdict and remand the case for new trial.

*Reversed and remanded.*